# EXHIBIT 1
# AFFIDAVIT OF SHAWN EMMONS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| GARY LAMAR MCCALL, | : |
| Plaintiff, | : |
| v. | : Case No. 7:14-CV-12-HL-TQL |
| MARTY ALLEN, *et al.*, | : |
| Defendant. | : |

## AFFIDAVIT OF SHAWN EMMONS

Personally appeared before me, the undersigned officer duly authorized by law to administer oaths in and for the State of Georgia, Shawn Emmons, who, after being duly sworn, deposes and states as follows:

1.

My name is SHAWN EMMONS. I am *sui juris* and competent to testify in this matter and under no civil or legal disability. I give this Affidavit as evidence in the above-styled action and for any lawful purpose. I make this Affidavit based upon my personal knowledge of its contents.

2.

I am over the age of 18 and am competent to execute this Affidavit.

1

3.

I am currently employed by the Georgia Department of Corrections ("GDOC") as the Deputy Warden of Care and Treatment at Valdosta State Prison ("VSP"). As such, I am familiar with the grievance process and with inmate grievance records maintained and stored at VSP.

4.

As Deputy Warden of Care and Treatment, my responsibilities with respect to the grievance procedure include, among other things: ensuring that all offender grievances are entered into the electronic database, ensuring the offenders receive grievance forms when requested, and ensuring that grievance procedures are conducted in accordance with the GDOC's Standard Operation Procedures ("SOP").

5.

A history of all formal grievances and grievance appeals filed by an inmate are kept by the GDOC in the regular course of business for every inmate incarcerated by the GDOC. A true and correct copy of Inmate Gary McCall's grievance history accompanies this affidavit as Attachment 1 hereto.

6.

Each GDOC prison has a grievance procedure available to its inmates. GDOC Standard Operating Procedure IIB05-0001, which became effective on December 10, 2012, and applies to all grievances filed after that date, outlines this grievance procedure. (A true and correct copy of GDOC Standard Operating Procedure IIB05-0001 accompanies this affidavit as Attachment 2 hereto).

7.

Upon entering GDOC, each inmate, including Inmate McCall, receives an oral explanation of the grievance procedure as well as a copy of the Orientation Handbook for Offenders, which includes instructions about the grievance procedure. Additionally, inmates have access to a copy of this policy at each prison's library. (Attach. 2, ¶ VI(A)(1).)

8.

The GDOC encourages inmates to attempt to resolve complaints on an informal basis before filing a grievance. Nevertheless, an inmate is not required to attempt an informal resolution of his complaint before filing a formal grievance. (Attach. 2, ¶ VI(A)(4).)

9.

The first step in the two-step grievance procedure begins when an inmate files a formal grievance and resolution of the inmate's complaint is attempted. (Attach. 2, ¶ VI(C).)

10.

Formal grievance forms are available to all inmates in the control rooms of all living units and are also provided to an inmate upon the inmate's request. Inmates in isolation and segregation areas will be provided formal grievance forms if they make a request for such a form to the staff assigned to those areas. (Attach. 2, ¶ VI(A)(2).).

11.

An inmate must submit a formal grievance form to any prison counselor no later than ten (10) calendar days from the date the inmate knew, or should have known, of the facts giving rise to the grievance. (Attach. 2, ¶ VI(D)(4).) This time limit may be waived by the Grievance Coordinator for good cause. (Attach. 2, ¶ VI(D)(5)(b)(2).)

12.

When the inmate submits the formal grievance form to a prison counselor, the inmate will receive a receipt after the Grievance Coordinator reviews the inmate's grievance to determine if the inmate is in compliance and does not have more than two active grievances. The counselor then forwards the formal grievance form to the Grievance Coordinator. (Attach. 2, ¶ VI(D)(3).)

13.

Initially, the Grievance Coordinator will screen the formal grievance to determine whether to accept the formal grievance form or to recommend to the Warden that the formal grievance form be rejected. (Attach. 2, ¶ VI(D)(5)(a).) The Warden will reject a formal grievance if: (1) the grievance raises a non-grievable issue; (2) the grievance is not filed timely; (3) the grievance includes threats, profanity, insults, or racial slurs; or (4) the inmate already has two pending active grievances. (Attach. 2, ¶ VI(D)(5)(b).)

14.

If the Grievance Coordinator decides to accept the formal grievance form, or if the Warden rejects the Grievance Coordinator's recommendation to reject the formal grievance form, the formal grievance form will be processed. (Attach. 2, ¶ VI(D)(6)(a).)

15.

To process the formal grievance, the Grievance Coordinator will appoint an appropriate staff member to investigate the inmate's complaint. This staff member will conduct a thorough investigation that is appropriate to the situation. (Attach. 2, ¶ VI(D)(6)(b).) At the conclusion of this investigation, the staff member will prepare a complete written report containing a summary of the facts surrounding the inmate's complaint, the staff member's conclusions, and a

recommended resolution. This report is then submitted to the Grievance Coordinator. (Attach. 2, ¶ VI(D)(6)(c).) The Grievance Coordinator reviews the report provided by the appointed staff member and indicates either concurrence or disagreement with the report. The Grievance Coordinator then provides the Warden with a recommended response to the formal grievance. (Attach. 2, ¶ VI(D)(6)(d).)

16.

At this point, the Warden will review the grievance, the staff report, and the Grievance Coordinator's recommendation. The Warden then makes the ultimate decision regarding the prison's response to the formal grievance and prepares a written statement summarizing this decision. (Attach. 2, ¶ VI(D)(6)(e).) This written decision is sent to the Grievance Coordinator, who gives the decision to the inmate's Counselor. The inmate's Counselor then gives the decision to the inmate and requires the inmate to sign an acknowledgement of receipt. (Attach. 2, ¶ VI(D)(6)(f).)

17.

The Warden has 40 calendar days to deliver this written decision to the inmate, running from the date the inmate submitted the formal grievance form to a counselor. A one-time 10 day extension may be granted so long as the inmate is advised of the extension in writing prior to the expiration of the original 40-day period. (Attach. 2, ¶ VI(D)(7).)

18.

Once the inmate has received a written decision from the Warden regarding his formal grievance, he may initiate the second step of the grievance procedure, filing a Central Office Appeal. (Attach. 2, ¶ VI(E)(1).) An inmate can also file an appeal after the time allowed for the

Warden's decision to respond to his formal grievance (40 days) has expired and the Warden has not provided a response. (Attach. 2, ¶ VI(E)(1)(c).) If the Warden is late in responding, the inmate can also wait until he receives a written response from the Warden to file a Central Office Appeal. Either way, an inmate can file only one Central Office Appeal per grievance. (Attach. 2, ¶ VI(E)(4).)

19.

If an inmate decides to file a Central Office Appeal after receipt of the Warden's written response, he has seven (7) calendar days to do so, running from the date he receives the Warden's written response . (Attach. 2, ¶ VI(E)(2).) The Grievance Coordinator or Central Office staff can waive this time limit for good cause shown. (Attach. 2, ¶ VI(E)(2).) To file an appeal, the inmate must request and complete a Central Office Appeal form and give this form to his Counselor. The Counselor must then sign and date the form and given the inmate a receipt. (Attach. 2, ¶ VI(E)(5).) The same procedure is followed if an inmate decides to file an appeal after the Warden's response time has expired.

20.

The Counselor provides the Central Office Appeal form to the Grievance Coordinator. The Grievance Coordinator then sends the original formal grievance form, the Warden's decision, the Central Office Appeal form, and any other supporting documentation to the Central Office. (Attach. 2, ¶ VI(E)(6).)

21.

After receiving the appeal form and accompanying materials from the Grievance Coordinator, the Commissioner or his designee has 100 calendar days to deliver a decision to the inmate regarding the appeal. (Attach. 2, ¶ VI(E)(7).) Once a decision is made, the

Commissioner's designee will send the Central Office Appeal decision to the Grievance Coordinator. The Grievance Coordinator will then give the decision to a staff member for delivery to the inmate. The inmate must sign an acknowledgement of receipt of the appeal decision. This Central Office Appeal response is the last step in the GDOC's grievance procedure. (Attach. 2, ¶ VI(E)(8).)

22.

A review of Inmate McCall's grievance history revealed the following grievances: Grievance Number 151763 (dated June 21, 2013) complained that he was assaulted by another inmate who was supposed to be secured in the law library cage. (Attachment 3). The Warden denied this grievance on 7/31/2013. (Id.). Inmate McCall then appealed on 8/19/2013. (Id.). Inmate Affairs reviewed the appeal and denied the appeal on 9/12/2013. (Id.).

23.

Grievance Number 155526 (dated August 19, 2013) was filed complaining that he was assaulted a second time by Inmate Reynolds on July 5, 2013. (Attachment 4). This grievance was rejected as being filed out of time as outlined in the policy on August 20, 2013. (Id.). Inmate McCall was notified of the rejection on September 25, 2013. (Id.). Inmate McCall filed an appeal of the rejection on September 26, 2013, which was denied on October 17, 2013. (Id.).

24.

Grievance Number 157261 (dated September 12, 2013) was filed complaining that Inmate McCall was informed that he was being placed on the Tier II program per Warden Allen. (Attachment 5). Inmate McCall alleges that he was placed in Tier II as punishment for being attacked by Inmate Reynolds. (Id.). The Warden's designee denied this grievance because

involuntary assignments to segregation are not grievable. (Id.). Inmate McCall did not appeal the Warden's denial.

25.

Grievance Number 189849 (dated January 20, 2015) was filed complaining that Inmate McCall that he needed protective custody because he was housed in the same unit with various gang members. (Attachment 6). The grievance was investigated and denied by the Warden on February 27, 2015. (Id.). Inmate McCall filed an appeal on March 5, 2015. (Id.). The appeal has not yet been determined. (Id.).

Further Affiant sayeth naught.

Shawn Emmons
Deputy Warden of Care and Treatment
Valdosta State Prison

Sworn to and subscribed before
me this 22 day of April, 2015.

Notary Public, State of Georgia
My commission expires: 8/24/2018

Notary Public, Lowndes County, Georgia.
My Commission Expires August 24, 2018.